UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| REINO DE ESPANA, | : | |
| | : | |
| Plaintiff, | : | OPINION AND ORDER |
| | : | |
| - against - | : | 03 Civ. 3573 (LTS) (RLE) |
| | : | |
| AMERICAN BUREAU OF SHIPPING, et al., | : | RELATED CASE: |
| | : | |
| Defendants. | : | 04 Civ. 0671 (LTS) (RLE) |

**RONALD L. ELLIS, United States Magistrate Judge:**

**I. INTRODUCTION**

Plaintiff Reino de España ("Spain") brings this case – arising from the casualty and sinking of the *Prestige* off the coast of Spain in 2002 – against American Bureau of Shipping ("ABS"), and other defendants. By letter dated November 10, 2005, ABS maintains that it inadvertently produced ten pages of privileged e-mail communication, and twenty-four pages of privileged handwritten notes. It claims that these documents are protected by attorney-client privilege and attorney work-product because they reflect the transmission of confidential legal advice related to the *Prestige* litigation. ABS asks the Court to order Spain to return or destroy these allegedly privileged documents. For the reasons which follow, ABS's request is hereby **DENIED**.

**II. BACKGROUND**

On March 4, 2005, ABS discovered its October 2004 production of 8,317 pages of documents to Spain included allegedly privileged e-mail communication bates-stamped ABS 0231009 - 0231014 and ABS 0231015 - 0231018. ABS asserts that the e-mails include legal advice regarding ABS's potential liability based on the adoption of different safety standards for

vessels. By letter dated March 4, 2005, ABS notified Spain that it discovered the inadvertently disclosure of the e-mail documents. ABS requested the immediate return or destruction of the original documents and duplicate copies. On May 11, 2005, ABS inadvertently produced documents bates-stamped ABS 0297424 - 0297432, which are duplicate copies of the same bulker safety e-mails previously produced.

On May 16, 2005, ABS learned that twenty-four pages of handwritten notes – bates-stamped ABS 0108354 - 0108360, ABS 0108432 - 0108440, ABS 0108922 - 0108924, ABS 0109046 - 0109048, ABS 0109071 - 0109073, ABS 0109083, and ABS 0109093 – had been disclosed to Spain in a production of 24,017 pages of documents on April 16, 2004. The notes summarize ABS's discussions with counsel regarding its strategy for addressing media inquiries related to the *Prestige* casualty. By e-mail dated May 17, 2005, ABS notified Spain of the inadvertent production, and requested the return or destruction of these documents.

ABS renewed its request for the return or destruction of the allegedly privileged e-mails and notes on July 5, 2005. Spain responded by letter dated July 8, 2005, analyzing each document, and explaining that they were not privileged because they represent ABS's non-legal discussions of business-related issues. On July 19, 2005, ABS notified Spain that it would seek resolution of this dispute by the Court without responding to the arguments Spain raised in its letter. On November 10, 2005, ABS brought the dispute to the Court's attention, and requested that the Court order Spain to return or destroy allegedly privileged documents. On November 16, 2005, in order to ascertain whether ABS's documents are privileged, the Court ordered the submission of the disputed documents for *in camera* review. On November 18, 2005, after conducting an inspection of the documents, the Court ordered ABS to submit a sworn affirmation

setting forth the background, preparation, and intended purpose of the handwritten notes. The Court also granted Spain's request to submit an affidavit regarding its reliance on the disclosed documents, and allowed the parties to supplement their legal analysis of privilege.

## III. DISCUSSION

### A. E-mail Communications

The attorney-client privilege protects from disclosure confidential communications made between client and counsel for the purpose of obtaining or providing legal advice or services. *See* **United States v. Construction Prods. Research, Inc.**, 73 F.3d 464, 473 (2d Cir. 1996). ABS "bear[s] the burden of demonstrating that the [documents at issue] are privileged and that the privilege has not been waived." **In re Phillip Servs. Corp. Secur. Litig.**, 2005 WL 2482494, at *1 (S.D.N.Y. Oct. 7, 2005).

ABS claims that its officials sought legal advice from general counsel via e-mail after reviewing a bulker safety news article. Spain contends that the e-mails discuss non-legal, business-related issues. After conducting an *in camera* review of the documents, the Court finds that ABS's contentions are without merit. The e-mails contain non-legal discussions of business-related issues. More specifically, the e-mails contain a discussion of the bulker safety news article. The discussion focuses primarily on ABS's relative advantage or disadvantage vis-a-vis its competitors if it adopts different bulker safety standards. The recipients of the e-mail communications include Frank Iarossi, ABS Chairman and CEO; Robert Somerville, ABS President; Steven McIntyre, ABS Director of Regulatory Affairs; Donald Liu, Senior Vice President of Technology and Chief Technology Officer; Stewart Wade ("Wade"), ABS Vice President of Marketing Development and Communication; and Thomas Miller ("Miller") ABS

3

General Counsel. The inclusion of ABS employees outside the legal department as recipients further support the conclusion that the e-mails contain business advice. *See* **Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A, et al.**, 2004 WL 3019767, at *1 (S.D.N.Y. Dec. 29, 2004). The attorney-client privilege attaches when a client requests legal as opposed to business advice. "If the communication concerns business matters, the privilege does not apply." **Atronic Int'l, GMBH v. SAI Semispecialists of America**, 2005 WL 2738914, at *3 (E.D.N.Y. Oct. 18, 2005).

ABS argues that the e-mails comprise mainly legal advice and that the presence of some business advice does not obviate the privilege. It relies primarily on two cases, **Stratagem Dev. Corp. v. Heron Int'l N.V.**, 153 F.R.D. 535 (S.D.N.Y. 1994), and **Studiendgesellschaft Kohle mbH v. Novamont Corp.**, 1980 U.S. Dist. LEXIS 15042 (S.D.N.Y. Nov. 17, 1980). This reliance is misplaced. In **Stratagem**, the court found that the document "clearly reflects legal advice." 153 F.R.D. at 543. In **Studiendgesellschaft**, the "communications at issue were between client and attorney, and the subject was the settlement of a legal dispute and how best to achieve that settlement." 1980 U.S. Dist. LEXIS 15042, at *9. What both cases have in common is that the court found that the subject matter of the communications centered around legal advice. Contrary to ABS's contentions, legal issues do not predominate in the e-mails. Accordingly, the communications are not protected by the attorney-client privilege.

**B. Handwritten Notes**

The handwritten notes disclosed by ABS were prepared by Wade, ABS's primary spokesperson following the *Prestige* casualty. ABS contends that the notes discuss legal matters combined with Wade's purview of public relations, and that most of the notes summarize

discussions with ABS counsel concerning legal strategy for addressing media inquiries regarding the *Prestige*. The first set (ABS 108354 - 108357) and the third set (ABS 0109822 - 0109824) reflect telephone discussions among Wade, ABS counsel, and a public relations firm. The second set (ABS 0108432 - 0108440), fifth set (ABS 0109071 - 0109073), sixth set (ABS 0109083), and seventh set (ABS 0109093) of notes reflect conversations between Wade and Miller. The fourth set of notes (ABS 109046 - ABS 109048) address a conversation between Wade and a journalist. ABS asserts both the attorney-client privilege and work-product privilege with respect to these notes.

**1. The Attorney-Client Privilege**

After conducting an *in camera* inspection of the notes, the Court finds that the notes contain discussions of non-legal issues, including business, press and public relations strategies. ABS claims that relevant non-legal considerations may be incorporated into counsel's legal analysis without loss of the privilege. ABS also maintains that there is no requirement for the privilege to be apparent on the face of the document. ***See* Cuno, Inc. v. Pall Corp.**, 121 F.R.D. 198, 202 (E.D.N.Y. 1998). **Cuno** concerned a patent infringement suit, and involved documents "contain[ing] the usual interchange which occurs between an inventor and his patent attorney." **Id**. Unlike the position and function of ABS's general counsel, "the domain of patent lawyer is a highly technical one. The determination of whether an invention is new, useful and unobvious necessarily requires an analysis of the technical aspects of the invention." **Id**. This case is distinguishable. The non-legal matters here are not integral to the privilege claim, and not protected by the attorney-client privilege.

5

**2. The Work-Product Privilege**

ABS also asserts the work-product privilege with respect to the handwritten notes. To invoke the work-product privilege, a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation. *See* **MSF Holding Ltd. v. Fiduciary Trust Company Int'l.**, 2005 WL 3046287, at *1 (S.D.N.Y. Nov. 10, 2005). ABS maintains that Wade prepared each note in anticipation of litigation. The Court finds this argument unpersuasive. ABS has not shown that the notes "would not otherwise have been prepared in a substantially similar form." **Id**. The Court finds that in light of the *Prestige* casualty, ABS would have created notes concerning press and public relations strategies in the normal course of business without the threat of litigation. "The information detailed is not the sort that would be sought only because litigation was anticipated." **Id**. at *2.

**C. Waiver of Privilege**

ABS contends that it inadvertently produced the allegedly privileged documents. The voluntary production of a privileged document "removes all confidentiality from the document and clearly effects a waiver of any privilege otherwise applicable." **Eigenheim Bank v. Halpern**, 598 F. Supp. 988, 991 (S.D.N.Y. 1984). The privilege is not waived if the disclosure is inadvertent. *See* **Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.**, 104 F.R.D. 103, 105 (S.D.N.Y. 1985). The privilege is waived "if the disclosing party failed to take reasonable steps to maintain the confidentiality of the assertedly privileged documents." **Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ.**, 1995 WL 491491 at *7 (S.D.N.Y. Aug. 17, 1995). The Court should consider the number of documents involved as well as the time frame in which

the production takes place. *See* <u>United States v. Rigas</u>, 281 F. Supp. 2d 733, 738 (S.D.N.Y. 2003). Admittedly, a vast number of documents had to be reviewed by ABS in this litigation. ABS maintains that during the review of documents for production counsel distinguished privileged and non-privileged documents, and supervised the manual and electronic segregation of the documents. ABS does not provide any additional information to support its contention that it exercised reasonable precautions to prevent inadvertent disclosure. ABS produced duplicate copies of documents previously inadvertently disclosed, failed to include the documents in its privilege log, and did not mark the documents as privileged. The procedure ABS used to safeguard the confidentiality of the materials was inadequate, and effects a waiver of any privilege otherwise applicable.

Spain argues that ABS's failure to seek timely judicial intervention supports a finding of waiver. *See* <u>In re Grand Jury (Impounded)</u>, 138 F.3d 978 (3rd Cir. 1998). Although ABS notified Spain of its privilege claims and "continued to assert it in subsequent communications, these assertions were insufficient to protect [its] rights." <u>Id</u>. at 982. "Judicial enforcement of the privilege was the only remedy that [ABS] could have obtained" to foreclose Spain's use of the documents. <u>Id</u>. Spain's "continued use of the documents directly undermined the purpose of" the privilege asserted. <u>Id</u>. ABS's inordinate delay in seeking judicial intervention, therefore, supports a finding of waiver of any privilege otherwise applicable to the e-mails and handwritten notes.

## IV. CONCLUSION

After conducting an *in camera* review of the documents, the Court finds that the e-mails

bates-stamped ABS 0231009 - 0231014, ABS 0231015 - 0231018, and ABS 0297424 - 0297432, and the handwritten notes bates-stamped ABS 0108354 - 0108360, ABS 0108432 - 0108440, ABS 0108922 - 0108924, ABS 0109046 - 0109048, ABS 0109071 - 0109073, ABS 0109083, and ABS 0109093, are not protected by the attorney-client or work-product privilege. ABS's request that the Court order Spain to return or destroy the documents is hereby **DENIED**.

**SO ORDERED this 14th day of December 2005
New York, New York**

*(signature)*

**The Honorable Ronald L. Ellis
United States Magistrate Judge**