UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- ⫲

REINO DE ESPANA,                                          :

                                        Plaintiff,        :        OPINION AND ORDER

                    - against -                           :        03 Civ. 3573 (LTS) (RLE)

AMERICAN BUREAU OF SHIPPING, et al.,                      :

                                        Defendants.       :
-------------------------------------------------------------- ⫲

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Reino de Espana ("Spain") brings this action, arising from the casualty of the *Prestige* off

the coast of Spain on November 19, 2002, against American Bureau of Shipping, ABS Group of

Companies, Inc., and ABS Consulting, Inc. (collectively, "ABS").  Pending before the Court is

ABS's motion to compel Spain's disclosure of records: 1) concerning email communications

from the period November 12, 2002, to November 20, 2002 (the "casualty period"); and 2)

prepared by the Permanent Commission for the Investigation of Maritime Accidents (the

"Permanent Commission").  Spain maintains that the pending motion should be denied because

the electronic records ABS seeks simply do not exist, and that records from the Permanent

Commission are privileged.  For the reasons which follow ABS's motion to compel is

**GRANTED**.

## II. BACKGROUND

ABS served Spain with a document request dated January 6, 2004 ("first document

request") seeking records about the handling of the *Prestige* casualty, and specifically requesting

that email communications and other electronic records be produced as part of Spain's response.

Spain did not object to the production of electronic records, and disclosed some responsive documents.

On July 16, 2004, ABS notified Spain that its discovery production was deficient, and clarified that it sought electronic records from approximately thirteen different government ministries.  On August 6, 2004, Spain objected to ABS's clarification as overbroad and unduly burdensome, and maintained that it had already produced all non-privileged responsive records. Nevertheless, ABS renewed its request for responsive emails and electronic records on August 31, 2004.  At that time, Spain represented that it would ensure that all non-privileged responsive records were produced.

On January 3, 2005, ABS narrowed its discovery request by asking Spain to limit its search of responsive emails and electronic records to approximately ninety-eight names and fifteen government email addresses.  Spain rejected this request on the grounds that it constituted a fishing expedition, and that the computers of government officials are subject to Spanish privacy laws and government privileges, and cannot be searched without the individual user's consent.

Spain's production comprised sixty-two emails.  ABS contends that the  production of only sixty-two emails is plainly deficient and suspect, especially in light of what appears to be well-developed email systems in government ministries and deposition testimony indicating that email was used extensively as a work and communication tool.  It argues that the lack of responsive records is the result of Spain's destruction of evidence or failure to preserve evidence.  For its part, Spain maintains that it has fully complied with its discovery obligations and continuously supplemented its discovery production.  For instance, on January 20, 2006, it disclosed

2

approximately three hundred additional emails.  ABS claims that the January 20 production is an example of Spain's inadequate response to its discovery requests because only nine emails were within the casualty period.

On January 31, 2006, ABS made a number of inquiries to Spain concerning the extent of its search for responsive records, and asked it to provide a list of all responsive emails that have not been disclosed, and the basis for their withholding.  Spain failed to provide a meaningful response, except to state that all responsive non-privileged emails that were located had been produced.

After reviewing the parties submissions, the Court found that a determination could not be made on the pending motion based solely on the parties written submissions and affidavits, and that an evidentiary hearing was necessary to determine the availability, if any, of additional electronic records, and to resolve material factual disputes concerning Spain's email systems and use of email.  Spain moved to limit the scope of the hearing to the technical nature of its email systems and use of email, arguing that issues related to the preservation or destruction of email should not be addressed.  The Court directed the parties to be prepared to address all issues surrounding the pending motion.  The evidentiary hearing was held on February 9-10, 2006. Both parties presented expert witnesses who testified about Spain's email systems and the availability of electronic records.  Spain also presented three government officials who testify as to their particular agency's email system and its use of email.

ABS's motion to compel asserts that Spain is withholding records on the basis of Spanish privacy laws and government privileges.  Spain contends that it has already produced responsive records to ABS's broad discovery requests, that privacy concerns militate against additional

email and computer searches and that the Permanent Commission records are privileged.

### III. DISCUSSION

**A.    The Legal Standard**

The scope of discovery is generally limited to any matter, not privileged, which is relevant to the claim or defense of any party or appears reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." **Ferguson v. Lion Holding, Inc**., 2005 WL 1216300, *2  (S.D.N.Y., Mar. 25, 2005).  The Court has broad discretion in managing discovery.  **Wills v. Amerada Hess Corp**., 379 F.3d 32, 41 (2d Cir. 2004);  **In re Fitch, Inc**., 330 F.3d 104, 108 (2d Cir. 2003); **Cruden v. Bank of New York**, 957 F.2d 961, 972 (2d Cir. 1992).

**B.    ABS's Motion to Compel**

In response to ABS's motion to compel, Spain argues that: 1) ABS's discovery request is overbroad and unduly burdensome; 2) it has already searched for and produced records responsive to ABS's document request, and that additional searches would constitute a fishing expedition; 3) privacy concerns militate against additional email and computer searches for responsive records; and 4) records from the Permanent Commission are privileged.

**1.    ABS's Discovery Request is Not Overbroad or Burdensome**

ABS seeks discovery records from approximately thirteen Spanish government ministries. Spain argues that some of these ministries had limited or no involvement in the *Prestige* casualty, and a search in these ministries is unnecessary and burdensome.  It maintains that the search for discovery records should be focused on the two agencies that managed and coordinated the

4

response to the casualty – the Directorate General of the Merchant Marine (the "Merchant Marine"), and the State Society of Salvage and Marine Safety ("SASEMAR"). Spain's Opposition to the Motion to Compel ("Spain Mem.") at 11. Spain contends that ABS's document request is overbroad and unduly burdensome in 1) the number of requests (approximately ninety-two requests, some with multiple sub-sections) and 2) its vague and non-specific language. Id. at 18. In light of Spain's concerns, ABS narrowed the scope and impact of its discovery request by compiling a list of approximately ninety-eight individuals and fifteen government email addresses to be searched for discovery records. Spain argues that searching the individual computers and email addresses that ABS proposes for discovery would constitute a fishing expedition. It contends that "given the marginal relevance of the individuals on this list . . . the burden of conducting further searches on an individual basis far outweighs the likelihood that relevant evidence will be found." Spain Mem. at 14. It alleges that the individuals on ABS's list did not play an active role in the decision-making process with respect to the *Prestige* and that responsive emails, if any, would have been captured in the searches it has already conducted. In reply, ABS points out that the electronic records disclosed thus far include approximately 300 emails, only nine of which were dated from within the casualty period. Additionally, most of the emails appeared to come from the same individual.

By clarifying and narrowing its request, ABS has limited the scope of Spain's search. It is not requesting discovery from unlimited sources. ABS's list of ninety-eight names and fifteen email addresses would help Spain perform a targeted and focused discovery search, thus reducing the breadth and burden of ABS's original request. ABS's request is not, therefore, overbroad or burdensome. Spain has failed to offer any support for its contention that the individuals and

email addresses on ABS's list are not relevant to this action.  Since Spain's government agencies and ministries are not connected by a single or centralized server on which emails may be located and retrieved, searching individual computers and email addresses is integral to the procurement of discovery records.

### 2.   Spain's Search for Discovery Records

ABS avers that Spain launched hundreds of government officials with computers and access to email to respond to the *Prestige*, and seeks the production of all emails and electronic records from the casualty period.  It contends that deposition testimony supports the contention that these officials used email for the transmission of reports and photographs related to the casualty.  ABS's Motion to Compel ("ABS Mot.") at 3-4.  Spain maintains that it has already searched for and produced all discovery records from the casualty period.  It contests ABS's characterization of its use of email during the casualty period and argues that the records ABS seeks simply do not exist.  It offers the testimony of government officials from the Merchant Marine, SASEMAR, and the Ministry of Development in support of its contention that additional records from the casualty period do not exist.

### a.   Electronic Records from the Merchant Marine

At the evidentiary hearing, David Alonso-Mencia ("Alonso-Mencia"), the technical advisor to the General Director of the Merchant Marine, testified about the technical nature of his agency's email system, use of email, and search for electronic records concerning the *Prestige* crisis.  He testified that the use of email as a communication tool at the Merchant Marine was at the time of the casualty – and remains – not generally widespread or extensive.  He maintained that since the Merchant Marine's use of email is limited, it follows that few electronic records

would be available from the casualty period.  The Court does not find Alonso-Mencia's

testimony credible.

Alonso-Mencia testified that since the beginning of the casualty, he was instructed, in

person, by the General Director of the Merchant Marines to preserve records related to the

*Prestige*.  Hearing Tr. at 115 and 121-22.  However, Alonso-Mencia was not in the office when

the casualty began.  Moreover, the General Director spent part, if not all, of the casualty period

away from the office responding to the *Prestige* crisis in La Coruña.  He conceded that the first

time he was officially requested to preserve documents concerning the *Prestige* was in early 2004

– over a year after the casualty.  Hearing Tr. at 114.  Whether it was Alonso-Mencia or the

General Director who was away from the office, it is clear that he could not have been instructed,

in person, to preserve records related to the *Prestige* since the beginning of the casualty period.

Moreover, Alonso-Mencia's deposition testimony flatly contradicts his hearing testimony.

During his deposition, Alonso-Mencia stated that he did not perform work in connection with the

*Prestige* casualty until 2003.  He testified in court, however, that he worked on the *Prestige* since

the beginning of the casualty.  Hearing Tr. at 121-22.  In light of these inconsistencies, the Court

finds that Alonso-Mencia's testimony is simply not credible.  Spain's reliance on Alonso-

Mencia's testimony to explain the lack of electronic records from the casualty period is,

therefore, misplaced.

Alonso-Mencia testified that the Merchant Marine's search for records related to the

*Prestige* consisted of 1) requesting that individuals voluntarily disclose records, and 2) searching

a limited number of computers and workstations.  This approach was simply not adequate

because, over time, additional computers and workstations had to be searched for records

7

concerning the *Prestige*.  Hearing Tr. at 113-14.  If the agency had performed a diligent discovery search of all possible sources – individual computers, workstations, and email addresses from the onset, subsequent searches would not have been necessary. It is not clear whether emails and electronic records were among the records the Merchant Marine initially collected and preserved. Hearing Tr. at 115.  Since the Merchant Marine does not have a central server where electronic records could be stored or preserved, any existing electronic records and email communications would have been located in individual computers and workstations.  The Merchant Marine, however, failed to conduct a comprehensive computer-by-computer search.  Instead, only a limited number were searched.  The timeliness of the search is also at issue.  Some computers were first searched in 2004 – more than a year after the casualty period.  The failure to conduct a timely and effective search for electronic discovery records undermines Spain's position and indicates that evidence related to the *Prestige* was likely lost.

### b.      Electronic Records from SASEMAR

Fernando Bregon, the director of telecommunications and computers at SASEMAR, testified at the evidentiary hearing about his agency's email system, its use of email, and its search for responsive electronic records.  As with the Merchant Marine, SASEMAR does not have a central server where electronic records may be stored or preserved.  Therefore, any existing electronic records and email communications would be located in individual computers and workstations.  SASEMAR also failed to conduct a comprehensive search.

On January 29, 2004, more then a year after the casualty, SASEMAR issued a notice directing individuals to voluntarily preserve records related to the *Prestige*.  Hearing Tr. at 170. Despite this untimely notice, Bregon asserts that records were preserved because SASEMAR

officials know that they have an obligation to preserve records without being reminded or directed to do so, and that preservation is generally encouraged.  Hearing Tr. at 171.  This assertion is not supported by the record.  SASEMAR's policy concerning email storage is vague.  **Id**. at 170.   Individual users determine how long emails are preserved.  **Id**.  Individual users are responsible for downloading their emails and electronic records, and storing them.  **Id**. at 169.  Although SASEMAR's 2004 preservation notice directed individuals to preserve records related to the *Prestige*,  Hearing Tr. at 179, SASEMAR failed to coordinate or oversee the process.  **Id**.

The date of the preservation notice – more than one year after the casualty – coupled with the failure to conduct a timely computer-by-computer search for electronic discovery records, strongly indicates that evidence related to the *Prestige* has been lost.  Spain's reliance on Bregon's testimony to explain the lack of electronic records from the casualty period is, therefore, misplaced.

### c.      Electronic Records from the Ministry of Development

Alonso Prades, who works in email and internet services management at the Ministry of Development, testified at the hearing about his ministry's email system, its use of email, and its search for responsive electronic records.  He stated that individual computers in his ministry could not be searched for electronic records related to the *Prestige* without the individual user's consent because of privacy concerns.  Hearing Tr. 188-89, 193.  Indeed, a warrant or court order appears to be necessary to search individual computers.  **Id**.  Spain's reliance on Prades's testimony to explain the lack of electronic records from the casualty period, however, is misplaced.  His testimony indicates that the Ministry of Development, like the Merchant Marines and SASEMAR, failed to conduct a timely and diligent search.  In fact, Prades indicated that some

9

individual computers were first searched in 2005 – more than two years after the casualty.

Hearing Tr. at 203.  Prades testified that emails had to be routinely erased, Hearing Tr. at 200,

and that no backup or restoration had ever been requested.  Hearing Tr. at 201.  Moreover,

although he avers that documents were never destroyed in his office, his demeanor changed

noticeably when questioned about the destruction of documents generally in the Ministry of

Development.  Hearing Tr. at 203-08.

>    **d.**    **Spain's Search for Electronic Records in Other Agencies or Ministries**

Spain contends that in response to ABS's discovery requests it directed government

agencies and ministries to submit all records related to the *Prestige* to a central location within

the Ministry of Development for assembly and production.  Spain's Mem. at 4.  ABS argues that

Spain has avoided searching vast sources of responsive electronic evidence, and that outside of

the Merchant Marine and SASEMAR, it has done virtually no electronic searching.  The Court

agrees.  Spain has failed to present any evidence indicating that it has searched for responsive

discovery records outside of the Merchant Marine, SASEMAR, and the Ministry of

Development.  In fact, Spain has repeatedly insisted that the search for electronic records should

be limited to the Merchant Marine and SASEMAR.  It has failed, however, to demonstrate that

any limitation is appropriate.  This case concerns one of the largest oil spills in history.  The

response to the *Prestige* casualty involved coordination from numerous agencies and ministries.

For the Court to make a determination with respect to this case, it must consider all the evidence.

It is, therefore, necessary to have a complete record.  Spain has failed to show that it conducted a

timely and diligent search for electronic records, and that all electronic records have been

produced.  The failure to conduct an adequate search for electronic records inhibits the

prosecution of this case, and adversely affects both parties' claims.

### 3.     Privacy Concerns Surrounding Spain's Search for Discovery Records

ABS contends that Spain is withholding discovery records based on Spanish privacy laws and government privileges.  Spain maintains that although it has cited privacy restrictions concerning the email searches for certain individuals, it has not relied on a specific court order, legislative act, or executive branch directive.  Spain Mem. at 18-19.  Rather, with respect to the privacy restrictions, Spain maintains that its reference to privacy issues is to demonstrate the burden imposed on Spain in searching for emails, especially where individuals are no longer employed by the Administration.  **Id.** at 19.  Spain argues that the Court should consider the burden that would be imposed on Spain to conduct further email search "given that there are privacy rights" and that "permission would be sought to search out individual computers, and that further searches would need to be done on an individual basis."  **Id**.  Spain argues that privacy concerns, coupled with the burden of searching for emails on a computer-by-computer basis rather than searching through a central server, militates against requiring Spain to conduct further and more invasive searches.  It is difficult to reconcile Spain's arguments – which attempt to minimize the impact of its privacy laws and government privileges on its searches for electronic records – with Prades's hearing testimony.  Prades's testimony clearly indicated that discovery searches at the Ministry of Development were inhibited by Spanish privacy laws which require a warrant or court order to search an individual's computers, absent their consent.  Hearing Tr. at 188-93.  This litigation is in the Southern District instead of a court in Spain.  Discovery is governed by the Federal Rules of Civil Procedure, not Spanish privacy laws and government privileges.  It was incumbent upon Spain to identify and preserve relevant

11

documentation related to its claims.  The failure to conduct discovery in accordance with the
Federal Rules and this Court's rules is sanctionable.

### 4.        Records from the Permanent Commission are Not Privileged

The Permanent Commission is charged with investigating the technical causes of
maritime accidents and to make recommendations to Spain to improve maritime safety.  The
Permanent Commission follows the rules of the International Maritime Organization ("IMO"), an
international body which engages in maritime investigations, including the Code for
Investigation of Marine Casualties and Incidents.  In 2003, the Permanent Commission
completed a report on the *Prestige* casualty and submitted it to the IMO.  On January 6, 2005, the
Court ordered Spain to produce records from the files of the Permanent Commission.  Pursuant
to this order, Spain produced the final report on the *Prestige*  casualty, but continued to withhold
some records on privilege grounds.  On August 1, 2005, the Court ordered Spain to produce all
withheld records related to the Permanent Commission.

On May 25, 2005, during the deposition of Alonso-Mencia, ABS learned that Spain was
preparing to submit an addendum to its Permanent Commission report on the *Prestige*.  On May
27, 2005, Spain sent a copy of the addendum to the IMO and the International Oil Pollution
Compensation Fund ("IOPCF").  Spain has refused to produce the addendum to ABS, asserting
that it is a privileged, technical report prepared in anticipation of litigation.

ABS argues that 1) Spain has failed to carry its burden of demonstrating that the
addendum is privileged, and 2) the privilege, if any, has been waived.  It contends that the
addendum was not prepared in anticipation of litigation, and that any privilege that may have
attached to the report has been waived by Spain's voluntary disclosure to the IMO and IOPCF.

12

For its part, Spain contends that the addendum comprises technical reports unrelated to the Permanent Commission.  It contends that the report was entitled "Addendum" because it was submitted by Spain in further support of its original IMO report.  Affidavit of David Alonso-Mencia, attached as Exh. 3 to the Affidavit of Vincent Foley.  It contends further that the addendum was prepared by non-testifying experts and civil servants after studying and analyzing the *Prestige* casualty.  Spain Mem. at 20-22.  It maintains that under Rule 26(b)(4)(B), Federal Rules of Civil Procedure, "the facts known and opinions held by non-testifying experts who are retained or specially employed in anticipation of litigation or preparation for trial are subject to discovery only in exceptional circumstances."  **Adams v. Shell Oil Co.**, 132 F.R.D. 437, 440 (E.D.La. 1990).  Spain argues that it has not waived the protection afforded to its non-testifying experts under Rule 26(b)(4)(B) by submitting the addendum to the IMO.  Spain Mem. at 23.

ABS argues that even if the addendum was prepared by a non-testifying expert, as contemplated by Rule 26(b)(4)(B), Spain has failed to show that 1) it was prepared in anticipation of litigation, and 2) the privilege has been preserved.  The Court agrees.  The addendum may have been created irrespective of litigation, because it was prepared to rebut a report from the Bahamas Maritime Authority.  **See** ABS's Reply Memorandum in Support of its Motion to Compel ("Reply Mem.") at 8.  Spain has also failed to explain why the voluntary disclosure of the addendum to two third parties – the IMO and IOPCF, both international organization that work to promote transparency and information sharing – does not waive any privilege which might have attached to the addendum.  **Id**. at 9.  Since Spain has failed to meet its burden to demonstrate privilege, it shall produce all the records of the Permanent Commission by **November 20, 2006.**

C.      **Spain's Failure to Preserve Discovery Records**

While ABS's motion is brought as a motion to compel production of evidence, a central

issue is whether Spain appropriately handled the records that were requested.  Even if a production

request does not specifically address the preservation issue, a party is obliged to preserve relevant

records.  ABS's position is that the small number of emails produced can only be explained if

many emails were destroyed.  The electronic records that ABS seeks are from the casualty period

and bear directly on both parties' claims, and may elucidate Spain's response to, and handling of,

the casualty.  Spain claims the electronic records simply do not exist.  The record and the

testimony offered at the evidentiary hearing, however, shows that Spain failed to place a timely

and adequate litigation hold in its agencies and ministries.  Both at the Merchant Marine and at

SASEMAR notices for the preservation of documents date to early 2004 – more than one year

after the casualty.  The failure to act timely supports the allegation that the lack of electronic

records is a function of the failure to adequately preserve evidence, and not an indication that

such records simply did not exist.

Given the nature of Spain's email systems and its failure to timely search for and preserve

evidence, the records probably would no longer exist.  It may, therefore, be futile to order Spain

to conduct a diligent computer-by-computer search.

## IV. CONCLUSION

For the foregoing reasons, ABS's motion to compel is **GRANTED**.  **IT IS HEREBY**

**ORDERED** that ABS may file an application requesting the relief, remedy, or sanction it deems

appropriate in light of this finding by **December 12, 2006.**  Spain may respond by **January 12,**

**2007**.  Spain shall produce the records of the Permanent Commission by **November 20, 2006.**

14

**SO ORDERED** this 2nd day of November 2006
New York, New York

The Honorable Ronald L. Ellis
United States Magistrate Judge

**SO ORDERED** this 2nd day of November 2006
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge