UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| REINO DE ESPANA, | : | |
| | : | |
| Plaintiff, | : | OPINION AND ORDER |
| | : | |
| - against - | : | 03 Civ. 3573 (LTS) (RLE) |
| | : | |
| AMERICAN BUREAU OF SHIPPING, et al., | : | |
| | : | |
| Defendants. | : | |

RONALD L. ELLIS, United States Magistrate Judge:

## I. INTRODUCTION

Reino de Espana ("Spain") brings this action, arising from the casualty of the *Prestige* off the coast of Spain on November 19, 2002, against American Bureau of Shipping, ABS Group of Companies, Inc., and ABS Consulting, Inc. (collectively, "ABS").   Spain is seeking reconsideration of this Court's Opinion and Order dated November 2, 2006 ("Opinion and Order"), granting ABS's Motion to Compel disclosure of records concerning email communications during the period of November 12-20, 2002 (the "Casualty Period"), and records of the Permanent Commission for the Investigation of Marine Accidents ("Permanent Commission").  Spain also requests an adjournment of the briefing schedule set forth in the Opinion and Order. For the reasons stated below, Spain's motion for reconsideration is **DENIED**.

## II.  STANDARD FOR RECONSIDERATION

Spain may move for reconsideration of the Opinion and Order on the basis of "mistake, inadvertence, surprise, or excusable neglect."  Rule 60(b)(1), Federal Rules of Civil Procedure. Reconsideration is merited if Spain can "demonstrate that the Court overlooked controlling

decisions or factual matters that were put before it on the underlying motion." **Shamis v. Ambassador Factors Corp.**, 187 F.R.D. 148, 151 (S.D.N.Y. 1999).  The matters must "reasonably be expected to alter the conclusion reached by the court." **Davidson v. Scully**, 175 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).  "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." **Id**.

### III.  DISCUSSION

Spain sets forth a number of grounds as bases for its motion to reconsider: 1) the Court's Opinion and Order that Spain produce an addendum should be corrected to order production of the underlying documents of the expert authors of the addendum; 2) Spain should be afforded an opportunity to search for emails not accessible through conventional means in order to satisfy the Court's order to produce; 3) the Court should reconsider its finding that Spain failed to offer evidence concerning the individuals and emails listed in ABS's January 3, 2005 letter; 4) the Court's credibility finding of David Alonso-Mencia ("Alonso-Mencia") is clearly erroneous and based on a mischaracterization of his testimony; 5) the number of emails produced far exceeded the Court's finding; and 6) the Court should determine when a litigation hold should have been established based on governing law.  Plaintiff Reino de Espana's Memorandum in Support of Motion for Reconsideration of this Court's Opinion and Order dated November 2, 2006 ("Spain's Mem.").

## A.  Order to Produce Underlying Documents of the Expert Authors of the "Addendum"

Spain asks the Court to correct its Opinion and Order insofar as it orders Spain to produce technical reports known as the Addendum to the Permanent Commission Report ("Addendum")

because Spain produced the Addendum in 2005, and has, in accordance with the Opinion and

Order, produced the underlying documents of the Addendum.  Spain's Mem. at 7.  ABS

maintains that to the extent the Opinion and Order suggests that the Addendum has not been

produced, the point is not material, therefore, reconsideration is not warranted.  Defendants'

Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration of this Court's

Opinion and Order Dated November 2, 2006 ("ABS's Opp.") at 20.

The Court finds that to the extent the Opinion and Order may have ordered the production

of documents already produced, this is not a matter that would "reasonably be expected to alter

the conclusion reached by the court" that these documents should be produced, **Davidson**, 172 F.

Supp. 2d at 461, and, therefore, reconsideration is not warranted.  The issue, of course, may be

considered on the question of sanctions.

**B.  Reconsideration of Rulings Regarding Email Production**

**1.  Spain's Request for Opportunity to Search for Emails Not Accessible Through Conventional Means**

Spain argues for reconsideration of this Court's finding that missing emails are likely lost

and that a further search for emails would be futile.  **Id**.  It contends that it should now be

afforded an opportunity to search for emails not accessible through conventional means.  **Id**.  In

support of this contention, Spain maintains that it has not previously agreed to undertake any

forensic search for emails and was never ordered to produce emails beyond those found on

computers.  **Id**. at 7-8.  Spain claims that ABS's motion for sanctions is premature because the

Court promised them an opportunity to offer evidence on the preservation and spoliation issues at

the evidentiary hearing held on February 9- 10, 2006.  Plaintiff Reino de Espana's Reply

Memorandum in Further Support of Motion for Reconsideration of this Court's Order Dated

November 2, 2006 ("Spain's Reply") at 2.  It contends that its understanding of the evidentiary

hearing was that the Court would hear testimony on the nature of Spain's email systems and their

usage in the Prestige incident, and that Spain had reserved the right to brief the issue of adequate

preservation of emails at a later date.  **Id**. at 8, 12.

      Prior to the hearing, the Court stated that it would not preclude evidence of preservation

at the hearing.  Spain's Mem. at 12.  Indeed, both parties were given the opportunity to brief the

preservation issue, along with any other issues presented during the evidentiary hearing.  Spain

presented some arguments on the preservation issues, but those arguments do not support

reconsideration of this Court's Opinion and Order.

      In its motion to reconsider, Spain asks the Court to allow it more time to engage in a

forensic search for emails that may exist in a format which is inaccessible through conventional

means, but can be retrieved by forensic computer experts.  Spain's Mem. at 15.  The Court finds

this request to be inconsistent with the evidence in the record.  In its post-hearing brief, Spain

argued that the testimony of all of the hearing witnesses makes clear that "[o]ther forensic

methods of preserving and searching for e-mails suggested by ABS would not have been any

more effective than Spain's chosen methods. . ." Plaintiff Reino de Espana's Post-Hearing Brief

in Opposition to Defendants' Motion to Compel Production of Electronic Documents ("Spain's

Br.") at 3.  Spain has consistently maintained that email usage was not prevalent among Spanish

officials and that a significant number of emails from the Casualty period do not exist.  ***See, e.g.***,

Spain's Br. at 16 ("backup tapes for the Casualty Period would have been reused by the time

litigation was reasonably anticipated. . .").

Spain maintains that it understood the evidentiary hearing to be the first step in a **Zubulake** analysis, where the Court would first consider the nature and usage of the responding party's computer system before determining sanctions for spoliation.  Spain's Mem. at 12-14 (*citing* **Zubulake v. UBS Warburg, LLC**, 217 F.R.D. 309 (S.D.N.Y. 2003).  It argues that the three-step **Zubulake** analysis is necessary before the Court considers remedies.  **Id**. at 13-15. This argument does not meet the standard for reconsideration. Moreover, Spain's attempt to shift its argument only highlights the nature of its prior approach to the email issue.  In its post-hearing brief, Spain complained that ABS was attempting to compare this case to **Zubulake**, and apply the standards therein, but that the "factual underpinnings of this case (from e-mail usage to relevance of e-mails) could not be more different."  Spain's Br. at 17-18.  Now that this Court has found that emails were likely lost, it now urges the Court to apply the **Zubulake** standards so as to allow it the opportunity to do a further search for emails that it has consistently maintained do not exist.  Spain's Mem. at 12-15.  Having found that Spain violated its discovery obligations under the Federal Rules of Civil Procedure, this Court has the authority to proceed to a consideration of appropriate sanctions without following the procedural path established for the facts of **Zubulake**.  ***See, e.g.***, **Residential Funding Corp. v. DeGeorge Financial Corp.**, 306 F.3d 99, 106-07 (2d Cir. 2002) (federal courts have authority to consider sanctions where evidence was not destroyed, but was not timely produced).  The Court did not overlook the fact of recoverable emails; Spain insisted that there were no emails to recover.

### 2. Number of Emails Produced

Spain claims that this Court incorrectly concluded that it had produced only sixty-two emails, when it had produced over six thousand emails, one hundred thirty-four of which are

from the casualty period.  Spain's Mem. at 21.  Even if Spain were correct about the number of

emails produced from the casualty period, the difference between the one hundred thirty-four

claimed and the sixty-two cited in the opinion would not have altered the conclusions reached by

the Court, and is not an adequate basis for reconsideration.

**C. Reconsideration of Ruling that Spain Failed to Offer Evidence Concerning Individuals and Emails Listed in ABS's January 3, 2005 Letter**

Spain also requests consideration of the Court's finding that it failed to offer any support

for the contention that the ninety-eight individuals and email addresses requested by ABS are not

relevant to this action.  Spain's Mem. at 16.  It argues that the Court failed to consider the

Affirmation of Joaquin de Fuentes Bardaji ("de Fuentes Aff.") submitted in opposition to the

motion to compel, in which he sets forth the employment background of the individuals and

Spain's lack of control over some of them. **Id**.  ABS argues in opposition that Spain's reliance on

the de Fuentes Affirmation is misplaced because Spain failed to produce this affiant at the

evidentiary hearing for cross examination.  ABS's Opp.  at 11.

The de Fuentes affirmation was inadequate to support Spain's argument on relevance.

While the Court does not agree that Spain was required to actually produce de Fuentes, the

affirmation itself did not establish a lack of relevance.  The mere declaration that individuals

were not employed in certain ministries, did not play an active role in the response to the Prestige

casualty, or were not under the control of Spain does not establish that they had no relevant

emails.  Indeed, Spain has conceded that emails of thirty-four individuals from ABS's list,

including the thirty-two employees of DGMM and SASEMAR, are relevant.  Spain's Mem. at

16.  Reconsideration on the basis that the Court failed to consider the de Fuentes Affirmation is

6

**DENIED**.

**D.  Reconsideration of the Court's Credibility Finding of David Alonso-Mencia**

        As another basis for reconsideration, Spain argues that this Court unfairly characterized

Alonso-Mencia's testimony at the evidentiary hearing as not credible. **Id**. at 20.  It maintains that

the inconsistencies relied upon by the Court in its Opinion and Order are not supported by the

hearing record.  Spain's Reply Mem. at 8.  Spain cites various sections of Alonso-Mencia's

hearing testimony that are consistent with his deposition testimony as support for its contention.

Spain's Mem. at 19-20.  However, the hearing record illustrates the inconsistencies within

Alonso-Mencia's testimony regarding when he became aware of the requirement to preserve

documents and emails.  Hearing Transcript, February 9, 2006 ("Hr'g Tr.) at 114.  Alonso-Mencia

first testifies that the first official request to preserve documents was at the beginning of 2004.

**Id**.  He then testifies that in 2002, after the casualty, he was preserving documents.  **Id**. at 115.

After an attempt to clarify the time period when preservation began, Alonso-Mencia testifies that

from the beginning of 2003, the DGMM was preserving information.  **Id**.  In its Opinion and

Order, the Court states that Alonso-Mencia testified that since the beginning of the casualty, he

was instructed to preserve records.  Opinion and Order at 7.  While the Court's use of the phrase

"the beginning of the casualty" is imprecise, the term was meant to convey at or shortly after the

sinking occurred.  In any case, the ambiguities in Alonso-Mencia's testimony remain.  For

example, at the hearing, Alonso-Mencia testified that after receiving a verbal instruction to

preserve documents from the general director of the DGMM, he contacted certain principal

people to act on the instruction, including Manuel Nogueria ("Nogueria").  Hr'g Tr. at 121-22.

He further testified that he spoke with Nogueria before the end of 2002.  Hr'g Tr. at 123.

7

However, Alonso-Mencia states in his deposition testimony that he first spoke to Nogueria to discuss the Prestige ". . . quite a long time afterwards.  It might have been 2004."  **Id**. at 124. Spain argues that "the deposition testimony on this marginal issue is indefinite at best, and an insufficient basis to impugn a person's credibility."  Spain's Reply at 10.  This argument might have merit if it were accurate, but Alonso-Mencio's credibility was not merely the result of a specific factual inconsistency; it encompassed the totality if his testimony, including not only what he said, but his demeanor, responsiveness, lack of memory on critical issues, and personal knowledge.  Notwithstanding certain statements that can be interpreted as consistent with his deposition testimony, this Court finds Alonso-Mencia's testimony not credible.  Reconsideration on this basis is **DENIED**.

**E. The Court Should Determine When a Litigation Hold Should Have Been Established**

Finally, Spain argues that the Court should establish a litigation hold date before determining that Spain breached its discovery obligations.  Spain's Mem. at 21.  It maintains that the phrase "from the outset" in the Opinion and Order is imprecise and there is no way for it to know what date is being referred to by that phrase.  **Id**.  The Court disagrees.  The absence of a unique "trigger-date" for implementation of a litigation hold was unnecessary on the facts of this case.  "The duty to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."  **Zubulake v. UBS Warburg, LLC**, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Regardless of the exact date when Spain should have issued a litigation hold, this Court's finding that Spain has breached its duty to preserve evidence is supported by the record.  Notices to preserve documents at both the Merchant Marine and SASEMAR were issued in early 2004,

more than a year after the casualty, and six months after Spain commenced suit on May 16, 2003. *See* Hr'g Tr. at 114. This finding is sufficient to warrant a determination that Spain violated its discovery obligations. *See* **Zubulake**, 220 F.R.D. at 216 ("the duty to preserve evidence arose, at the latest on [the date] Zubulake filed her EEOC charge"). Without outlining any material facts or controlling precedents that the Court overlooked, this is an improper basis for reconsideration and is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Spain's motion for reconsideration is **DENIED.  IT IS HEREBY ORDERED** that Spain shall produce the records of the Permanent Commission by **February 9, 2007.**

**SO ORDERED this 24th day of January 2007
New York, New York**

**The Honorable Ronald L. Ellis
United States Magistrate Judge**